PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ANTONIO FIGUEROA, Defendant and Appellant. SAME *v.* SAME and SAME *v.* SAME.

Nos. 8583, 8584 and 8585. Argued May 21, 1941.—Decided May 23, 1941.

*A Lastra Chárriez* and *A. D. Marchand Paz,* for appellant. *George A. Malcolm, Attorney General,* and *R. A. Gómez, Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

On the 8th of July, 1938, three complaints were filed against Antonio Figueroa in the Municipal Court of Caguas, for violations of the Beverage Act of 1936, committed one the 10th, and the other two, the 13th of June, 1938.

The defendant was convicted and he appealed to the District Court of Humacao. There, on September 6, 1939, the trials *de novo* were jointly held. The defendant waived the term to render judgment in order to file a certain memorandum, and the question discussed therein having been decided against him, the court, on September 14, 1939, rendered its judgments adjudging the defendant guilty in the three cases and imposing in each one a month in jail and the costs.

The defendant appealed and submitted his separate appeals on one brief. He assigns three errors, which in his opinion, the court *a quo* committed: in not filing away, on the petition of the district attorney, one of the complaints which referred to the crimes charged as committed on the 13th of June, 1938; in deciding that the prosecuting attorney was not bound to prove that the defendant had not registered the stills aforesaid, and in rendering its judgments against the law and the evidence.

Arguing the first assignment of error, the appellant expresses himself as follows:

"A mere reading of the complaints corresponding to cases 8584 8585 (see pp. 1 and 2 of the judgment rolls of said cases) would be enough to conclude that during the search to which the complaints

refer, made at the same time and place, the two stills which were the object of said search, were seized (a different one is mentioned in each complaint), this being the reason for which the failure to register both apparatus in the Treasury of Puerto Rico should have been charged in one complaint, or, as the transaction as to the said failure to register both stills shows one violation included in the two complaints, one of them should have been filed away by the lower court. The district attorney in charge of the case, acknowledged the situation, and for that reason, at the opening of the case he said:

" 'District Attorney: These are two cases of the 13th of June that refer to the still. I believe that it is the same to have 100 stills or to have one; each still that you have does not constitute a different violation.' (Page 2, T. of E.)

"And the district attorney insisted, after hearing the testimony of one of the star witnesses:

" 'District Attorney: After hearing the testimony of Chief of Police Ceballos, on the 13th, I think there was only one element, at the same hour and in the same place, and I believe that, even if there had been a hundred stills, the crime is only one. In respect to the two complaints, I believe that I should desist of one. And I am going to request that one of the cases be filed away.' (T. of E. p. 47)."

We do not agree. The law which has been violated, that is, Section 81 of Act No. 6 of June 30, 1936 (Third Special Session p. 44) is identical to Section 72 of Act No. 115 of 1936 (1 page 610) which the appellants cite. It provides:

"Every person who has in his possession or custody or at his disposition in any way, whether as owner, lessee, depositary, or as guardian or otherwise, any mounted or unmounted still which is not registered with the Treasurer; or who fails to register any still that may be in his possession, on deposit, in his custody, or at his disposition in any way; or who prevents or hinders the free inspection thereof by an internal-revenue agent, shall be guilty of a misdemeanor. And every unregistered still shall be attached by the Treasurer or by internal-revenue agents, and by him confiscated and sold for the benefit of The People of Puerto Rico, or destroyed if he believes it advisable."

As it may be seen, what the law punishes is the failure to register the still. Each still requires a separate registration

and as a consequence each failure to register constitutes a different violation. There was no error.

■ The second assignment of error raises a question of evidence which was decided adversely to the contention of the appellant by this same Court some years ago.

It literally expresses as follows:

"The lower court committed error in holding that in cases for violations of Section 72 of the 'Alcoholic Beverage Law of Puerto Rico' in relation to the failure to register stills in the Insular Treasury, the district attorney is not bound to prove, in any way, that the defendant does not have the still or stills registered in the Insular Treasury."

And this Court in the case of People v. Millán, 33 P.R.R. 881, decided that:

"When it is shown that the still was found in the possession of the defendant the burden is on him to prove that it was registered in the Treasury of Puerto Rico. The government is not bound to prove that it was not registered."

To arrive at this conclusion the Court relied on the case of People v. Hernández, 30 P.R.R. 342, wherein it was said:

"The evidence usually introduced is of the seizure of the still in the possession of the defendant and a certificate of the Treasurer to the effect that from the records of his Department it does not appear that the defendant has registered in that office any still or distilling apparatus in accordance with the provisions of section 61 of Act No. 55 of June 15, 1919. That was in fact the evidence offered by the Government in this case.

". . . . Clearly the defendant objected on the ground that the Treasurer is not authorized to issue negative certificates. The appellant cites in his brief the Law of Evidence and The Blue Book on Evidence by Jones, vol. 3, pages 536, 537, 555 and 556 . . . .

"The question is interesting, but it is unnecessary to pass upon it. The Government could have done without the certificate. When it was shown that the still was seized in the possession of the defendant the burden was on the defendant to prove, as a matter of defense, that he had it registered in the office of the Treasurer of Puerto Rico.

"In the biography of Chief Justice Ruffin, that famous lawyer who had so much influence on the making of North Carolina's jurisprudence, the following paragraph appears:

" 'In *Shaw* v. *Morrison,* he laid down the doctrine, since followed in every state but one, that in an indictment for retailing liquors without license, the burden is on the defendant to show the existence of a license. 14 N.C.R. 299. Black on Intoxicating Liquors, 507.' 4 Lewis, Great American Lawyers, 292.

"Taking as a basis the decisions of numerous states, Cyc. lays down the rule as follows:

" 'In cases where a license to sell is relied on as a defense to the prosecution, the government is not bound to produce any evidence in support of the negative allegation that the sale was made without license, but on the contrary defendant must assume, the burden of proving that he was duly licensed.' 23 Cyc. 247.

"Although this case does not deal with a sale of liquor without a license, the similarity is complete and the jurisprudence applies."

■ In the third and last assignment of errors it is held that the evidence is insufficient.

The evidence of the prosecution consisted in the testimony of the Policemen Frank Navas and Domingo E. Llamas and that of Chief of Police, Alfonso Ceballos.

Navas referred to the 10th of June, 1938, and answering the questions of the district attorney, said:

"Q.—On that 10th day of June, 1938, did you have any intervention with him? (with the defendant).

"A.—Yes, sir, I had. I searched his home where I was informed that . . .

"Q.—Don't say what was informed . . .

"A.—We arrived at the place. That place had a zinc fence . . . and the door had a chain which locked it . . . and when we were able to open the chain, when we entered the yard . . . we found that the doors of the house were closed . . . as the search warrant that I had at first was for the house, the second floor of the house, and a shack which belongs to the same house that is in the yard. I went to the shack in order not to lose time . . . we began to look for crevices . . . to look inside until we could observe through one of them that there was liquor or that there were mashes and smelled rum or mash, and there was a small lock on the door and we broke the lock and when we opened the door, we found that there was a certain number of

mashes and some gallons of rum . . . Also there was a great number of bags of coal. When we started to destroy the mashes, a woman came out . . . and said: 'Were you knocking at the door?' and we answered: 'Yes ma'm'. 'What do you want?' 'We want to go upstairs because we have a search warrant', and she said to us: 'Come in' and opened the door that led upstairs and then we went up and found a number of empty bottles, and also we found parts that put together made two stills, that is, two of these drums, the coils, certain number of rubber tubes, I believe that three rubber tubes, four small water-cooling kegs, a funnel . . . ."

He also said that the defendant was there and "I asked him if he was the owner of the house and he said no; I asked him what he was doing there, and he told me that he was making a call, and then I said that I was sure that he was the owner of the apparatus, and he said no and asked what proof I had; then I took his name and personal circumstances, in company of Policeman Llamas, and we took the notes of all we had seized and we proceeded to take it to Police Headquarters . . . In that house we found nothing within the law; all that was seized there was illegal."

And referring to the 13th, he testified:

"To finish: we entered and there was a still working and a funnel over the keg that was being filled . . . I saw two drums assembled with an apparatus of those which form a triangle like this, and a coil and a rubber tube and then there is a gallon container and the spurt was coming out . . . of 'cañita' (moonshine) rum."

The other policeman said that he had known the defendant for three years, that he had been in his home the 10th and 13th of June, that the house was searched and they found him there. On the 10th they seized in the upper floor of the house all the implements of a still and in a shack in the backyard, a keg of rum. The defendant said that the things seized were not owned by him. He does not know who is the owner of the house, nor who pays the rent, but he knows that the defendant lives in it.

The Chief of Police, Ceballos, referring to the 13th of June, said:

"That day, about 10 o'clock in the morning, the police of Caguas had to execute a search warrant in the house of Antonio Figueroa . . . when we tried to enter, they closed the doors of the stairs and we had to force the door . . . When we went up, a man named Isabel Díaz was coming down, with a gallon of rum . . . and when we went up to the kitchen, there were two stills working and distilling rum and by the side of them there was a small keg with ten gallons of rum . . . . we went into a room of the house and we found the defendant seated on a bed and beside the bed there was a small keg with rum and then we destroyed the two kegs, several funnels and some other things."

He did not see Santos Osorio or Manuel Negrón in the house.

The evidence for the defendant consisted in the testimony of Santos Osorio, Isabel Díaz and Manuel Negrón and of various receipts signed in Caguas by Cándido Martínez in January, February, March, April, May, June and July of 1938, each of them stating that he had received from Santos Osorio "the amount of twenty dollars for the monthly rent of a room which he occupies."

Osorio said that he was engaged in a "small business" of a still that was established in No. 3, Celis Aguilera Street, in the second floor of the house owned by Cándido Martínez; that the police entered the house, and found some appliances, that when this happened, the defendant, who has a butcher's shop business downstairs, went up to collect a bill for meat and the police found him there.

Isabel Díaz remembers that the 10th of June, 1938, he was upstairs above the defendant's butcher shop buying a gallon of rum from Osorio and the police caught him. That he did not buy rum from the defendant then nor at any other time. That Osorio was not an employee of Figueroa; that what he has had there is a butcher's shop for the last ten years.

And Manuel Negrón testified that the 10th of June, Osorio invited him to work in his rum factory in No. 3 Celis

682

Aguilera Street, upper floor, and that the factory belongs to Osorio, and not to the defendant.

Is the evidence sufficient? That for the defendant is incomplete and not very convincing. The first witness does not fix dates and the last witnesses only refer to the 10th of June. The receipts do not identify the leased "room". Besides, it was not believed by the court.

If the evidence of the prosecution is analyzed, it shows, in our judgment, the seizure of appliances for one or two stills on the 10th of June, 1938, and of two stills operating on the 13th in the house where the defendant lived, and that he was found in said house on both occasions, the second time seated on a bed, beside which there was a keg of rum.

The evidence is weak indeed, but sufficient, in our opinion, to sustain that notwithstanding his denial to the police on the 10th of June, it was the defendant who had under his control the unregistered stills and therefore, that the court did not err in adjudging him guilty and convicting him for the violations charged.

The appeals must be dismissed and the judgments appealed from be affirmed.